The Honorable, the judges of the United States Court of Appeals for the Eighth Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the Eighth Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Good afternoon everyone. I want to welcome you to the virtual forum for the U.S. Court of Appeals for the Eighth Circuit. And this special setting to have an opportunity to hear a case that we had postponed from an earlier date. And with that, Ms. Quick, I will ask you to begin the argument for the appellant. May it please the Court. The District Court erred in holding Mr. McVay was not eligible for a safety valve reduction. The parties agreed that Mr. McVay met the first four requirements of safety valve relief. However, the government asserted that Mr. McVay was not eligible under 5C1.2A5 because of his proffer and later testimony that Blaze Harding had offered to sell him firearms and that Mr. Harding had later bragged about putting those firearms on someone else and that these statements were untruthful. However, the plain language of 5C1.2A5 only requires that a defendant testify truthfully as to his own relevant conduct. Here, that would be the relevant conduct to Mr. McVay's distribution of methamphetamine conviction. The District Court's interpretation expanded the standard definition of relevant conduct to include unrelated criminal conduct involving other individuals and not conduct by Mr. McVay. This requires reverse merman for resentencing. First, I think it's necessary to address the standard of review. The standard of review here is de novo. The government treats this as though the District Court determined that relevant conduct was the proper definition for analyzing whether truthful statements were required for safety valve relief and just simply found that this was relevant conduct. That's not what the District Court did. The District Court stated it was engaging in an interpretation of the guidelines and determined that this provision, A5, was much broader than relevant conduct. Anything kind of relating to this world of drug trafficking, the offense of conviction, broader than the definition of relevant conduct. So because it's a question of guideline interpretation, review is de novo. But I think either way you look at it, whether it's clear error, whether it's de novo, this was an error by the District Court in finding that the untruthfulness removed him from safety valve relief. Ms. Quick, this is Judge Smith. Is your argument based on the guideline language or are there cases that have interpreted the guidelines in the manner in which you argue for us to do today? I am relying mainly on the plain language of the guideline and the commentary. The plain language of the guideline uses that standard offense or offenses, course of conduct, and then the guideline commentary note 3 further indicates that when they use this language as is used throughout the guidelines, what the commission means is relevant conduct. So that's what I'm relying upon primarily for this argument, that it is limited to relevant conduct. And I in fact think the government agrees that it is limited to relevant conduct. But you're saying, so then the dispute is about how broad does the concept of relevant conduct extend? Yes. Go ahead. I didn't mean to cut you off. That's okay. And I think what the District Court did was, I don't think the District Court analyzed this just under the definition of relevant conduct. What the District Court was doing was doing this comparison with the obstruction guideline and saying, well, that says offensive conviction, that's narrower. What does it mean when we're using this language under 5C1.2A5? What all can that encapsulate? Didn't the gun situation involve the same people with whom he was involved distributing methamphetamine? There were some similar players, but that's not enough to put it within the relevant conduct guideline, Your Honor. Haven't we sort of consistently said that guns are sort of a tool of the trade of drug distribution and therefore why wouldn't that fall within relevant conduct? I think if this were actions taken by Mr. Harding, right? If this was information where he said, I didn't have a gun, and it turned out to be truthful that he did have a gun, or if it involved his own conduct, then it would fall within relevant conduct. Does it make a difference that these are distribution and manufacturing charges rather than conspiracy charges? Because, you know, it seems to me that an argument can be advanced that when one looks at a conspiracy, if co-conspirators are involved and drugs is the object of the conspiracy and guns are tools of the trade in the drug trafficking business, that becomes a much easier case to say it all ties together for relevant conduct. But now we've got a distribution that's not a conspiracy. So in theory, at least all the people involved in this are just people who are mere buyer-seller relationships, right? Does the analogy to guns as tools of the trade break down at all? I think if it were a conspiracy, my argument would be a little bit more difficult. In this case, as the commentary to the relevant conduct guideline discusses, even when you're talking about joint criminal conduct, this appears to be a criminal enterprise where they might have had some overlap. They might have had similar suppliers and they all knew each other. But the commentary indicates that's not enough. And this wasn't a conspiracy. They sometimes had the same supplier, but it wasn't charged that way and I don't think it's asserted to be that way. And as far as... So how relevant does the relevant conduct actually have to be and how close does the nexus have to be before it can be considered in this type of a sentencing determination? So I think it has to be conduct by the defendant. Something that's foreseeable, something that he was even just aware of. Here, it's not criminal conduct by the defendant. Doesn't your argument, though, read out the phrase common scheme or plan? So common scheme or plan to the offense that he pled guilty to. Mr. McVeigh pled guilty to one distribution of methamphetamine conviction. There's nothing indicating that he ever used firearms or that he used firearms in connection with his distribution of methamphetamine. So this wasn't like... It can't be limited to just himself, can it, with a common scheme or plan language? It's not just limited to himself, but it only encapsulates other people if there's that joint criminal conduct. And this doesn't meet the definition of joint criminal conduct. This, as the proffer testimony and his later testimony indicated, there wasn't that they were dealing drugs in this instance and then Mr. Harding was like, hey, I have this firearm. Do you want to buy it? It's an indication that they were all around together. Someone was working on a car and Mr. Harding said, hey, I have a firearm. Do you want to buy it? And he said, no. That's not indicating it's part of a drug transaction or it's just part and parcel with his underlying offense. It's just a separate instance that's not related to the conduct he pled guilty to. Aren't the false statements in some way connected to the prosecution? And isn't that his conduct? I mean, you know, in the real world, what we're dealing with here is the judge found that this never happened. And so we're in sort of a pretend land where we're saying, well, is it relevant conduct or is it not? Because it never happened. But what we know indisputably happened, at least from the judge's perspective, is your client made a false statement in connection with these people who were somehow involved with him in the distribution of these controlled substances in order to shift the blame from one person to another. Now, are we really talking about his conduct? I think that blurs the line between what gets someone a 5K and what gets someone the two-level reduction under the guidelines. And I think the district court erred in doing that. The guidelines, the reason and the motivation for the two-level reduction is simply being truthful about what you did, your criminal conduct. And Mr. McVeigh was. And, you know, it's intended to give a reduction to these low-level, nonviolent offenders who come before law enforcement and testify truthfully about what they personally did. It's irrelevant if it helps the prosecution, if it leads to further prosecutions. If they already knew all the information, it doesn't matter because that's not the basis for that guideline. Now, that makes complete sense when we're talking about a 5K. Or just, was this helpful moving forward and could they use this information? But they're very distinct, and I think the district court, part of the error, was blurring that. All right, Ms. Quick, your time's slipping by. I'll let you reserve the remainder if you wish, or you can proceed. No, I'll reserve the remainder of my time. All right. Mr. Reinert? May I please the court, counsel? Defendant's approach to relevant conduct would narrow relevant conduct down to charged conduct. That's not what relevant conduct is. It's true offense conduct under 1B1.3. The approach 5C1.2 is saying only what the defendant did. Presumably, under that analysis, a defendant could say, I sold drugs on 18 occasions without identifying who he sold them to or where he got them from. That doesn't meet 5C1.2. 5C1.2 requires all information about the offense of conviction and relevant conduct in the same course of proceedings. We cited Quintana for the proposition that it's a clearly erroneous standard of review from this court. If you look at Quintana, Quintana actually relied on Turnier, which is an older case, I think from the late 90s, where actually the government tried to say that a 5C1.2 decision is a de novo review. And it was rejected because 5C1.2 says those are findings that need to be made. So those are factual findings by the court. Defendant's conviction is clearly an enumerated offense under 5C1.2. There's no legal challenge there. There's no legal issue. The guidelines say what the guidelines say. And simply applying those guidelines under Turnier would make these findings. The court's not making any legal decision. Well, counsel, how is Harding's conduct relevant? Conduct to McVeigh? Because the defendant brought, first of all, when you look at... I'll answer the question kind of a... I'm sorry, my other computer's ringing there. Hopefully I can talk over it. In drug trafficking, you always have two players. Drug trafficking is never a crime committed alone. It's always crimes committed with other persons in concert with one another. So when one is describing what they did, they're necessarily describing what others did. And in this case, the defendant said that his sources of supply were Katie and Blaze Harding. He also said that Blaze Harding would sometimes sell drugs for Katie when Katie wasn't available. So he actually described conspiratorial relationships, whether it's true or not. The way he described it, there was a conspiracy involving those individuals. Firearms are tools of the drug trade and clearly are either used to protect oneself, protect one's proceeds, protect drugs, or sometimes even traded for drugs. The court has seen thousands of cases like that. So Harding was part of that relevant conduct because he was involved in the drug trade with this defendant. So he had the obligation under 5C1.2 to tell us everything he knew about him and tell the truth about it. And that's where the defendant fell short. He failed to tell the truth. Well, what is the mischief in the dishonesty here in terms of its impact on the ability of law enforcement to hold individuals responsible for their actions? Well, really, 5C1.2 doesn't rely on whether we can hold someone responsible or not. It requires a requirement for the defendant to affirmatively tell the truth about everything he knows. And whether it's useful or not is really irrelevant. It's a requirement for the defendant to tell the truth. And that's where the defendant failed. Because as the court noted, he describes two firearms on one debrief. Then it's three firearms, then it's three handguns and a shotgun. Claims the shotgun is in a toolbox that is too small to even hold a shotgun. There's a whole host of lies built into that. Ultimately, he did not get obstruction of justice. That's, of course, a matter that's not on appeal. And obstruction is a narrower standard than the defendant's requirement to truthfully tell everything he knows under 5C1.2. And the descriptions about Mr. Harding's friend, Mr. Evans, all across the board are absolutely untruthful. Whether he's a heavyset guy with dark hair, a medium build guy. Mr. Evans testified in court before the district court judge in Mr. MacArthur's trial, not once but twice. That description in no way matched him at all. He was a tall, thin man with very long hair. Very distinctive. No way that the defendant was telling the truth about that. And those kinds of lies where he's trying to engage in behavior, talking about his conduct with one of his alleged drug sources, Mr. Harding. It will not meet that requirement under 5C1.2 to provide complete and truthful information in order to get the two-level reduction. So we would suggest the district court should be affirmed, Your Honor. Subject to your question. As I read the guideline, the safety valve requires him to be truthful about either his own offense and any other offenses that were part of the same course of conduct or common scheme or plan. Which is it here that he was untruthful about? Was it his own offense or the common scheme or plan? Well, offense of conviction in the application note also includes the development of conduct. I believe it's part of common scheme or plan in my view. It also would be part of his, insofar as he's describing drug trafficking activities by Mr. Harding, that's clearly part of his offense of conviction. Because if he's buying drugs from Harding, that in theory would be attributable to him for purposes of base offense level. But as he's describing the behaviors of his drug sources and who they're getting drugs from or who they're selling drugs to, or the relationships among the individuals involved in the conspiratorial activity, whether it's charged or not, that's still real offense conduct. That is all part of that same course of conduct and common scheme or plans. We would suggest it's both, Your Honor. Having no further questions, I will relinquish the balance of my time. Okay. I don't see any other questions from the panel. Ms. Quick, you are rebuttal. I think it's important when we're talking about relevant conduct, when we're talking about the guidelines, it's always about the defendant's conduct. Even if we're talking about common scheme, course of conduct, it's about the defendant's common scheme. It's about the defendant's course of conduct. Of course, a defendant can be subject to enhancements for another person's conduct, but only if he was involved in some way. Not just present. If he aided and abetted it or if it was part of the joint criminal conduct. Here, it was simply a person who was also a drug dealer offering a firearm, which he declined. That is not conduct by the defendant. It's not conduct he aided and abetted, and it's not any kind of joint criminal conduct. Because it's limited to him and he was only required to testify truthfully as to what he did, the false statements found by the district court do not bar him from safety valve relief. If there are no further questions, I would ask this court to reverse and remand for resentencing. Ms. Quick, just one quick question, so to speak. You're not contesting the falseness of the statement, correct? We're not contesting on appeal to credibility finding. Thank you. Thank you, counsel, for appearing today and providing argument to the court in conjunction with the briefing that has been submitted. We will take the case under advisement and render decision in due course. Counsel may be excused.